WILDER (UNITED STATES v.). See Case No. 16,694.

WILDER, The J. W. See Case No. 7,592.

## Case No. 17,652.

WILDES et al. v. PARKER et al.

[3 Sumn. 593; [1] 2 Law Rep. 239.]

Circuit Court, D. Massachusetts. May Term. 1839.

JURISDICTION OF FEDERAL COURTS—CITIZENSHIP— AMERICAN DOMICILED ABROAD.

1. The national character of persons, for the purposes of trade and commerce, depends. not upon the country of their nativity, but upon the place of their actual domicil. both in peace and in war.

2. Quære, whether a native-born American citizen. domiciled in a foreign country, and carrying on business in a house of trade established there, but never naturalized there, is to be deemed an alien merchant, and, as such, is entitled to maintain a suit. at law. or equity, in the circuit courts of the United States, touching the business or trade of the said house, against a citizen of the state of his birth, and of the state where the suit is brought.

This was a bill in equity. brought by the plaintiffs, who are domiciled merchants in the city of London and kingdom of Great Britain, and who were described in the bill

[1] [Reported by Charles Sumner, Esq.]

as aliens. and partners in trade there, under the firm of George Wildes & Co. The firm is composed of George Wildes, John Pickersgill, and William C. Pickersgill, all of whom, for the purposes of this suit, are admitted by the defendants to be subjects of Great Britain. and aliens to the United States,—and of Thomas Searle, who is a native of Massachusetts, and was a citizen of that state until the time of his removal to England, in the year 1834, when he entered the firm aforesaid as a partner, and became, and ever since has remained, domiciled in London. Mr. Searle has never been naturalized in Great Britain. nor in any way given up his citizenship in Massachusetts, otherwise than by his removal to, and domicile in London, where he is subject. like other domiciled merchants, to its laws. The defendants are inhabitants and citizens of Massachusetts.

The bill set forth certain commercial dealings between the plaintiffs and the defendant. Parker, occurring while all the plaintiffs were resident and domiciled in London; upon which a judgment. asserted by the bill to be erroneous and inequitable, has been obtained in a suit at law in this circuit court. brought by the defendant, Parker, against the present plaintiffs, in which suit they were described by the said Parker as aliens to each and every of these United States. The other defendant in equity, William Dehon, who is the assignee of the said Parker, he having. since the said suit at law, but previous to the judgment therein, become insolvent, was not a party to the said suit; but an action was brought in his name, on the judgment obtained as aforesaid, against one of the defendants. in the state of New York, where. at the time of the suit, he resided, and the amount of the same was recovered therein. and is now held by him. for the benefit of the several creditors of the said Parker, who have become parties to his assignment. The bill sought to recover back the amount so received by the said Dehon.

The case came on before the court at the present term, upon a plea interposed by Dehon, averring. that Searle is a citizen of Massachusetts. and not an alien. and not entitled to maintain the present suit against the defendants, or either of them, in this court.

Issue having been taken on the plea, the foregoing facts appeared in evidence. And thereupon, at the hearing, the following questions occurred, upon which the judges of this court were opposed in opinion: (1) Whether a native-born American citizen, resident and domiciled in a foreign country, and carrying on business as a merchant and partner in a house of trade established there,— but never naturalized in such foreign country,—is to be deemed an alien merchant, and. as such, is entitled to maintain a suit at law or in equity in the circuit courts of the United States, touching the business and

trade of the said house, against a citizen of the state of his birth, and of the state where the suit is brought, according to the constitution and laws of the United States. (2) Whether under the special circumstances and facts in this case, as above stated, the present bill is maintainable in point of jurisdiction, in this court. And, thereupon, upon motion of the plaintiff, the foregoing questions were stated and ordered to be certified under the direction of the said judges to the supreme court of the United States for a final decision.

Mr. Dehon, for plaintiffs.
Ivers J. Austin, for defendants.

STORY, Circuit Justice, in referring to the division of the court, upon the questions stated in this case, said: When this cause was first argued before me at chambers, I intimated an opinion, that, if any serious doubts occurred to my mind upon the points made at the argument, I should, with the assent of the counsel, propose, that they should be carried, upon a pro forma division of opinion of the judges of this court, when it was next in session, for a final adjudication in the supreme court. That suggestion was acceded to; and the statement of facts and points of division have been accordingly drawn up, to be certified to the supreme court. At the argument, I confess, that the inclination of my own opinion was, that this court had no jurisdiction of the cause, as it was not a suit between aliens on one side as plaintiffs, and citizens of this state on the other side as defendants. It appeared to me, then, that Mr. Searle, being a native citizen of Massachusetts, and never having been naturalized in England, ought to be deemed still to remain a citizen of this state. In this view of the matter, the case would fall directly within the authority of Strawbridge v. Curtiss, 3 Cranch [7 U. S.] 267. Upon further reflection, I entertain very serious doubts whether this opinion is correct; and as the point is one of frequent occurrence, and materially affects, or may affect, the interests and rights of many of our citizens, who are domiciled in foreign countries, it appeared to me desirable to have the opinion of the supreme court upon the point.

We all know, that the national character of parties, for the purposes of trade and commerce, depends, not upon the country of their nativity, but upon the place of their actual domicile, both in peace and in war. Thus, for example, if this country were now at war with Great Britain, Mr. Searle would be deemed an alien enemy, and his property, captured on the high seas, or elsewhere, would be liable to condemnation in our courts, as the property of an alien enemy, jure belli. In England, he would be deemed, in virtue of his commercial domicile, to be a subject, owing temporary allegiance to the crown as such, and entitled to the protection and support of the government as a British merchant and subject. The same doctrine is applicable to a state of peace. Thus, for example, if Mr. Searle were now the owner of a ship, trading with the United States, the ship would be treated as a foreign ship, liable to pay foreign duties. And if, in the importation of goods into the United States, any discrimination in duties were allowed between importations by citizens and by foreigners, Mr. Searle would, from his foreign domicile, be obliged to pay foreign duties, as a foreign or British merchant. In virtue of his domicile, Mr. Searle now enjoys in England all the privileges of a British subject and British merchant, for commercial purposes. In short, by the general principles of law, Mr. Searle is, from his domicile, now treated, for all commercial purposes, as an alien merchant of Great Britain. There is nothing new in this doctrine. The very question arose and was decided in Wilson v. Marryat, 8 Term R. 31. By the laws of Great Britain and the charter of the East India Company, British subjects were not at that time allowed to carry on trade with the East Indies. By the American treaty with Great Britain, in 1794, art. 13, "vessels belonging to citizens of the United States of America," (such are the very descriptive words of the treaty,) were allowed to carry on that trade. The suit was on a policy of insurance, on a ship owned in part by one Collet, who was a native subject of Great Britain, on a voyage to the East, and back to America. The case found, that Collet was domiciled in America, and there became and was received as a naturalized citizen of the United States. It was held by the court, that he was to be deemed, for the purposes of commerce, a citizen and merchant of the United States; and so within the protection of the treaty. Now, we know it to be a settled doctrine of the laws of England, that allegiance is perpetual, and that no native subject can throw off his allegiance, (whether naturalized abroad or not,) so as to cease to be a British subject; so that he is completely bound by the British laws. Yet here, notwithstanding this well-established rule, Collet was held to be an American merchant, entitled to the benefits of the treaty. Lord Kenyon, on that occasion, said: "Collet is a citizen of this country by birth, so that he cannot throw off his allegiance to this country. He is also a citizen of America for the purposes of commerce, it being found by the special verdict, that he had been adopted as a citizen of that country." This case was afterwards affirmed in the exchequer chamber (1 Bos. & P. 430). In McConnell v. Hector, 3 Bos. & P. 113, a question arose, whether persons, who were British-born subjects, but were domiciled (not naturalized) as merchants in an enemy's country, could sue as British subjects in the British courts. It

was held, that they could not. On that occasion Lord Alvanley said: "The question is, whether a man, who resides under the allegiance and protection of a hostile state for all commercial purposes, is not to be considered for all civil purposes as much an alien enemy as if he were born there. If we were to hold that he was not, we must contradict all the modern authorities upon this subject. While an Englishman resides in a hostile country, he is a subject of that country; and it has been held that he is entitled to all the privileges of a neutral country, while resident in a neutral country."

These are decisions of the courts of common law. But the doctrine is still more forcibly and conclusively established in the court of admiralty, where questions of this sort are of daily occurrence. It is there held, and the doctrine has been fully recognized in the supreme court of the United States, that, for the purposes of trade and commerce, the party acquires the national character of the country of his domicile, whether it is, in war, that of an enemy, or of a neutral; or in peace, that of any alien friend. The whole subject was very much considered by Mr. Justice Washington, in delivering the opinion of the court in the case of The Venus, 8 Cranch [12 U. S.] 253, 278–286. The constitution of the United States declares, among other things, that the judicial power shall extend to controversies "between a state or the citizens thereof, and foreign states, citizens, or subjects." The judiciary act of 1789, c. 20, § 11 [1 Stat. 78], declares, that the circuit courts shall have jurisdiction of suits of a civil nature, where "an alien is a party." The main question, therefore, in this case, is, whether by "alien," in the act of 1789, and by "foreign citizens or subjects," in the constitution, is meant such persons as are, either by nativity or by naturalization, aliens, or foreign citizens or subjects, or whether it applies to those who are temporarily and at the time aliens, or foreign subjects for commercial purposes. It would be strange, if, in respect to all commercial transactions, an American citizen, domiciled in a foreign country, is to be treated as a foreign merchant and foreign subject, and yet if he sues on a commercial transaction, arising during his domicile abroad, he is to be deemed an American citizen. That would be to say, that he was a foreigner, as to all purposes, except of suits in the courts of the United States. Now, this is the point, on which my doubts hinge; and I am, therefore, desirous of having the opinion of the supreme court thereon. I am aware of the case of Breedlove v. Nicolet, 7 Pet. [32 U. S.] 413; but it does not seem to me, under all the circumstances, decisive of the present.

NOTE: This case was certified on division to the supreme court of the United States, who were also divided in opinion upon it. [Unreported.] It was afterwards proceeded with in the circuit court.